**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MIKHAIL BULATOV, | : | |
| | : | Civil Action No. 11-845 (FSH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner, pro se
Mikhail Bulatov
Essex County Corr. Fac.
Newark, NJ  07105

Counsel for Respondents
Leah Amber Bynon
Assistant U.S. Attorney
970 Broad Street
Suite 700
Newark, NJ  07102

**HOCHBERG**, District Judge

Petitioner, Mikhail Bulatov, an alien detained in connection with removal proceedings and currently confined at the Essex County Correctional Facility in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The Respondents include Warden Roy L. Hendricks,

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Secretary of the Department of Homeland Security Janet Napolitano, U.S. Attorney General Eric Holder, and immigration officials John Tsoukaris and John T. Morton.

Because it appears from a review of the parties' submissions that Petitioner is not entitled to relief, the Petition will be denied.

## I.   BACKGROUND

Petitioner is a citizen of Russia who entered the United States in 2003 on a valid H4 Visa with authorization to stay in the United States for a period not to exceed three months.

On or about March 20, 2009, Petitioner submitted a Form 485 Adjustment of Status application in order to change his immigration status.  On that form, Petitioner falsely stated that he had never been arrested or imprisoned in the Republic of Kazakhstan prior to his arrival in the United States.[2]

Petitioner was placed in removal proceedings, for overstaying his visa, by issuance of a Notice to Appear on April 13, 2009.

On October 14, 2009, Petitioner pleaded guilty in this Court to one count of making a false statement on his Adjustment of

---

[2] As Petitioner has admitted, he was arrested and incarcerated in the Republic of Kazakhstan, prior to his entry into the United States, on charges related to the deaths of four persons in 1998.  Those charges remain pending and there currently exists an Interpol Red Notice and Request from the Republic of Kazakhstan seeking Petitioner's arrest and extradition.

2

status form, in violation of 18 U.S.C. § 1001, and was sentenced to a five-month term of imprisonment. See United States v. Bulatov, Criminal No. 09-0767 (D.N.J.).[3] Upon his release on March 29, 2010, Petitioner was taken into custody by immigration officials and was detained at the Essex County Correctional Facility, where he remains. The Notice to Appear charged that Petitioner was removable for overstaying his visa, in violation of Section 237(a)(1)(B) of the Immigration and Nationality Act.

At the time Petitioner was taken into immigration custody, the Supervisory Deportation Officer conducted a custody determination in which he determined that Mr. Bulatov should remain detained until removed. Petitioner was advised that he could request review of that determination, which he initially declined. Later, having made a request for a change in custody, pursuant to 8 C.F.R. § 236.1(c), Petitioner appeared for a bond hearing before an Immigration Judge on April 8, 2010. The Immigration Judge denied Petitioner's request for a change in custody. Petitioner did not appeal this decision.

Petitioner appeared for a master calendar hearing on April 8, 2010, at which he conceded removability. Petitioner requested

---

[3] This Court will take judicial notice of the dockets of this and other federal courts in cases related to this Petition. See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

adjournments to retain new counsel and to prepare applications for relief from removability.  Petitioner filed an application for asylum and withholding of removal and other relief on July 15, 2010.  On September 29, 2010, Petitioner appeared for a full-day merits hearing on his application.  The Immigration Judge scheduled the hearing to continue on October 20, 2010.  On December 2, 2010, the Immigration Judge issued her opinion and order denying Petitioner's various applications for relief and ordering Petitioner removed to Russia.  Petitioner timely appealed to the Board of Immigration Appeals ("BIA").

   The BIA originally ordered the submission of briefs by February 15, 2011.  Petitioner's counsel requested an extension of time, bringing the deadline to March 8, 2011.  On February 8, 2011, before the briefing deadline, Petitioner's counsel filed a motion to correct the proceedings transcript, which the BIA granted.  The Immigration Court sent the corrected transcript to the BIA on March 30, 2011.  The BIA then ordered the submission of briefs by April 28, 2011.  Petitioner's counsel again requested an extension, bringing the deadline to May 19, 2011. On July 6, 2011, the BIA issued a decision affirming the Immigration Judge's decision ordering that Petitioner be removed. Petitioner timely moved for the BIA to re-open his administrative appeal.  See 8 U.S.C. § 1229a(c)(7).  The BIA denied the motion

by decision dated November 23, 2011, at which time the order of removal became administratively final.

Meanwhile, on July 29, 2011, the United States Court of Appeals for the Third Circuit docketed Petitioner's application for review of the July 6, 2011 BIA decision.  See Bulatov v. Attorney General of the United States, No. 11-3048 (3d Cir.).  On October 6, 2011, the Court of Appeals granted Petitioner's motion for stay of removal.  The Court of Appeals has not yet entered its decision on the merits.  Petitioner also has appealed the November 23, 2011, BIA decision denying his application to re-open.  See Bulatov v. Attorney General of the United States, No. 11-4357 (3d Cir.).  The appeals have been consolidated.

On August 22, 2011, the government served Petitioner with a Notice to Alien of File Custody Review, which he refused to sign because he disputed the nature of his detention, whether it should be considered pre-removal-order or post-removal-order detention, and the standards by which the propriety of his detention should be determined.  (Letter Reply, Docket Entry No. 16.)  On October 24, 2011, Petitioner was served with a Decision to Continue Detention, in which he was advised that his file had been reviewed, including his false statements and criminal record, that he had not submitted any documentation or evidence to support his release, and that therefore he was to remain in immigration custody until his removal.  The Decision also stated

5

that Petitioner's custody status would again be reviewed 90 days after the stay of removal was lifted or one year from the date of that Decision.  (Letter, Docket Entry No. 18.)

On June 15, 2012, Petitioner filed a motion in the Immigration Court for custody redetermination.  On June 19, 2012, the Immigration Judge denied the motion for lack of jurisdiction, on the ground that Petitioner was subject to an administratively final order of removal.  See 8 C.F.R. § 1236.1(d)(1).  Petitioner appealed and, on August 31, 2012, the BIA affirmed on the grounds cited by the Immigration Judge.  (Letter Motion, Docket Entry No. 21.)

On February 8, 2011, during the pendency of the administrative appeal of the Immigration Judge's order of removal, Petitioner submitted this Petition, challenging the constitutionality of his prolonged detention.  Petitioner contends that Section 1226(a) must be read to permit discretionary detention only for the period reasonably necessary to secure removal and that, therefore, prolonged pre-removal-order detention in the absence of an adequate hearing violates his right to due process.  Petitioner contends that he has now exhausted his administrative remedies, that his detention has become unreasonably prolonged, and that he should be considered a pre-release-order detainee entitled to a bond hearing.  In support of his Petition, Petitioner relies upon Demore v. Kim,

6

538 U.S. 510 (2004) (relating to constitutionality of pre-removal-order detention), <u>Diop v. Holder</u>, 656 F.3d 1221 (3d Cir. 2011) (same), and <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) (relating to constitutionality of post-removal-order detention).[4]

In their Answer, Respondents assert that this Court lacks jurisdiction to review the discretionary decision to deny a bond and that Petitioner's detention is not unconstitutionally prolonged. During the pendency of this matter, Petitioner has filed several Letter replies advising the Court of developments in his removal proceedings and recent caselaw, appending copies of the relevant documents, to which Respondents have not responded. Briefing is complete and this matter is now ready for decision.

## II. ANALYSIS

A. <u>Detention of Aliens in Removal Proceedings</u>

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings. Title 8 U.S.C. § 1226(a) permits the Attorney General to arrest and detain certain aliens, "pending a decision on whether the alien is to be removed from the United States," and permits the Attorney General to continue to detain an arrested alien or to release the alien on bond or conditional parole. Under Title 8 U.S.C. § 1226(c),

---

[4] To the extent the Petition could be construed as challenging the order of removal, jurisdiction to review the order of removal lies with the Court of Appeals, before which Petitioner's appeal is pending. <u>See</u> 8 U.S.C. § 1252.

however, the Attorney General is required to detain certain criminal aliens during the pendency of their removal proceedings. Although § 1226(c) does not provide for bail, an alien detained pursuant to § 1226(c) may move for a Joseph hearing to determine if he falls within the categories of aliens subject to mandatory detention.  In re Joseph, 22 I. & N. Dec. 799 (BIA 1999).[5]  These generally are referred to as "pre-removal-order" detention provisions.

"Post-removal-order" detention is governed by 8 U.S.C. § 1231(a).  Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within a 90-day "removal period."

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Section 1231(a)(6) permits continued detention if removal is not effected within 90 days.

The Supreme Court first addressed the constitutionality of any of these detention provisions in Zadvydas v. Davis, 533 U.S.

---

[5] At the Joseph hearing, a detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the Bureau of Immigration and Customs Enforcement is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.

678 (2001), in which the Court held that extended post-removal-order detention under § 1231(a)(6) is subject to a temporal reasonableness standard. That is, the government may not detain indefinitely an alien ordered removed, but may detain such an alien only for a period reasonably necessary to secure his removal. More specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. See also Clark v. Martinez, 543 U.S. 371 (2005) (Zadvydas holding applies to aliens deemed inadmissible to the United States).

In Demore v. Kim, 538 U.S. 510 (2003), upon which Petitioner relies, the Supreme Court considered whether mandatory pre-removal-order detention of criminal aliens under § 1226(c) violates due process. In the case of an alien who conceded that he fell within the categories of deportable aliens subject to mandatory detention under § 1226(c), the Supreme Court found that mandatory detention of deportable criminal aliens pending their removal proceedings did not violate due process. 538 U.S. at 531. As an initial matter, the Court found that "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." In addition, the Court

9

noted that such proceedings typically last only a few months and that pre-removal-order detention has a finite termination point - issuance of a final decision on removability - rather than the "indefinite" and "potentially permanent" detention previously found, in Zadvydas, to be unconstitutional when imposed upon aliens subject to a final removal order but for whom removal was not reasonably foreseeable.  538 U.S. at 528-530 (distinguishing post-removal-order detention examined in Zadvydas).  In his concurrence, however, Justice Kennedy took the position that circumstances could arise in which long-term pre-removal-order mandatory detention might violate due process.  538 U.S. at 532-33 (Kennedy, J., concurring).

These cases form the foundation for Petitioner's challenge to his detention.

B.   Petitioner's Detention

Petitioner was taken into custody pursuant to 8 U.S.C. § 1226(a), which permits the Attorney General to exercise his discretion in determining whether to detain an alien during removal proceedings or to release such an alien on bond or parole.

Petitioner was granted a prompt administrative custody determination, followed by a bond hearing before an Immigration Judge, at which a decision was made to deny release.  Petitioner declined to appeal that decision to the BIA.  See 8 C.F.R.

§§ 236.1, 287.7.  Thereafter, Petitioner's custody was again administratively reviewed in a proceeding in which the government treated Petitioner as a post-removal-order detainee.  Most recently, Petitioner moved for a bond redetermination which was denied for lack of jurisdiction on the ground that Petitioner was then subject to an administratively final order of removal.

The question whether Petitioner is detained under the discretionary pre-removal-order statute, 8 U.S.C. § 1226(a), or the post-removal-order statute, 8 U.S.C. § 1231, was recently decided in accord with Petitioner's position in Leslie v. Attorney General of the U.S., 678 F.3d 265 (3d Cir. 2012).  The Court of Appeals there decided that an alien held subject to and within a stay of removal cannot yet be in the "removal period" of § 1231 but is, instead, confined pursuant to the pre-removal-order detention of § 1226.  Id. at 270.

Here, the Court of Appeals issued a stay of removal on October 6, 2011, before the administrative proceedings were concluded on November 23, 2011.  Accordingly, Petitioner has been held in discretionary pre-removal-order detention, under § 1226(a), since he was taken into immigration custody on March 29, 2010.  See Contant v. Holder, 352 Fed. Appx. 692 (3d Cir. 2009); Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008).

Nevertheless, pursuant to 8 U.S.C. § 1226(e), "The Attorney General's discretionary judgment regarding the application of

11

this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." This Court agrees that it lacks jurisdiction to review the discretionary custody decisions; in any event, Petitioner does not challenge those discretionary decisions. He alleges a constitutional violation, detention in violation of his due process rights. Courts generally agree that § 1226(e) does not divest them of jurisdiction to hear challenges to prolonged pre-removal-order detention under the Attorney General's discretionary authority, where such challenges raise constitutional claims or questions of law. See, e.g., Singh v. Holder, 638 F.3d 1196, 1200-02 (9th Cir. 2011) (collecting cases and holding that § 1226(e) does not limit federal court's jurisdiction to review bond hearing determinations for constitutional claims or legal error) (citing Demore v. Kim, 538 U.S. 520, 516-17 (2003)).

Taking guidance from Justice Kennedy's concurrence in Demore v. Kim, the Third Circuit has held that there are due process limitations on the duration of *mandatory* pre-removal-order detention under § 1226(c).

> Under the Supreme Court's holding [in Demore], Congress did not violate the Constitution when it authorized mandatory detention without a bond hearing for certain criminal aliens under § 1226(c). This means that the Executive Branch *must* detain an alien at the beginning of removal proceedings, without a bond hearing -- and

12

> may do so consistent with the Due Process Clause -- so long as the alien is given some sort of hearing when initially detained at which he may challenge the basis of his detention.  [This is the Joseph hearing.] However, the constitutionality of this practice is a function of the length of the detention.  At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.  This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances.  We decline to establish a universal point at which detention will always be considered unreasonable.
>
> ...
>
> In short, when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

Diop v. ICE/Homeland Security, 656 F.3d 221, 232-33 (3d Cir. 2011) (emphasis in original) (footnotes omitted).

Turning to the question of when mandatory pre-removal-order detention becomes "unreasonable," the Court of Appeals noted that the petitioner in Demore had been detained only six months, only slightly longer than the average length of pre-removal-order detention in contested cases, when his petition was decided.  The Court of Appeals agreed with the government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case, but also held that the

13

reasonableness inquiry must take into account errors in the proceedings that cause unnecessary delay.  In Diop, the Court of Appeals concluded that the petitioner's 35-month detention period, extended by the immigration judge's numerous errors and the government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, was unreasonably long.

The Court of Appeals for the Third Circuit also has had the opportunity to consider the constitutionality of prolonged detention under § 1226(a), the discretionary pre-removal-order detention provision directly at issue here.  In Contant v. Holder, 352 Fed. Appx. 692 (3d Cir. 2009), the Court of Appeals distinguished both Zadvydas and Demore, Zadvydas because post-removal-order detention was potentially indefinite and Demore because it involved mandatory detention.  Consistent with Zadvydas, however, the Court of Appeals construed the discretionary pre-removal-order detention provision, § 1226(a), as limiting the Attorney General's detention authority to the period "reasonably necessary" to effectuate the alien's removal.  In reaching its decision, the Third Circuit relied on Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008), in which the Court of Appeals for the Ninth Circuit held that the 3-year detention of an alien in removal proceedings, though prolonged, was not indefinite or unconstitutional.  The Ninth Circuit found

that removal in the reasonably foreseeable future was likely, as a petition for review of the administrative order of removal was then pending before it, and there was no indication that the petitioner could not be repatriated to his country of origin if ordered removed.  Thus, the petitioner was "not stuck in a 'removable but unremovable limbo.'"  Prieto-Romero, 534 F.3d at 1063 (citation omitted).  Though the end date of the petitioner's removal proceedings was uncertain, the Ninth Circuit was persuaded, because an Immigration Judge and the BIA had found the petitioner removable and strict procedural rules would govern judicial review of that decision, that the end date was reasonably foreseeable.

Similarly, in Contant, the Third Circuit held that the alien petitioner's 19-month pre-removal-order detention was not "indefinite" and, therefore, unconstitutional, as a decision on his removability appeared reasonably foreseeable and there was no indication that he could not be removed to his country of origin at the conclusion of his removal proceedings.  The Court further noted that the petitioner had been afforded a bond hearing and that much of the delay in proceedings was due to the alien's own request for a continuance.

Here, Petitioner has failed to establish that his detention is indefinite or that his removal is not reasonably foreseeable.  As of this writing, briefing before the Court of Appeals in

Petitioner's consolidated appeals is nearly complete. Thus, although the end date of his removal proceedings is uncertain, it surely is reasonably foreseeable. Petitioner has not suggested that he cannot be removed if he is unsuccessful in challenging his removal. Thus, Petitioner's detention, though prolonged, is not indefinite.

In addition, much of the delay in Petitioner's proceedings is attributable to him. Petitioner requested and received an adjournment before the Immigration Judge of approximately three months, after conceding removability, to prepare an application for relief from removal. Before the BIA, Petitioner's counsel requested two short extensions of time, which together amounted to approximately six weeks. Before the Court of Appeals, Petitioner has requested extensions of time or for leave to file noncompliant briefs several times, accounting for delays of approximately six months. See Bulatov v. Attorney General, No. 11-3048 (3d Cir.). Together, these requests for extensions of time account for approximately one-third of Petitioner's 30-month detention.

Finally, Petitioner received an initial bond hearing before an Immigration Judge which he declined to appeal, and he has received a subsequent administrative review. He is scheduled for

16

another administrative custody review soon.[6]  He has received the process he is due.

Accordingly, for all the foregoing reasons, Petitioner has failed to establish that his detention is unlawful.

### III.  CONCLUSION

For the reasons set forth above, the Petition for writ of habeas corpus will be denied.  An appropriate order follows.

```
                                    s/ Faith S. Hochberg
                                    Faith S. Hochberg
                                    United States District Judge
Dated: October 4, 2012
```

---

[6] As the Third Circuit's Leslie decision has resolved the question regarding the statutory authority for Petitioner's detention, 8 U.S.C. § 1226(a), this Court anticipates that future custody reviews will be conducted pursuant to the standards applicable to that provision.